UNITED STATES of America and John S. Wills, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

NATIONAL STATE BANK, Respondent-Appellant,

v.

George GREEN, M.D. and Margot M. Green, his wife, Intervening Defendants-Appellants.

No. 71-1065.

United States Court of Appeals, Seventh Circuit.

Jan. 7, 1972.

**1250**

Louis G. Horman, Metropolis, Ill., Michael Avedisian, Andrew H. Avedisian, Paducah, Ky., for respondent-appellant and intervening defendants-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Dept. of Justice, Tax Div., John P. Burke, Atty., Washington, D. C., Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., James R. Thompson, U. S. Atty., Chicago, Ill., Meyer Rothwacks, Crombie J. D. Garrett, Attys., Dept. of Justice, Tax Div., Washington, D. C., for petitioners-appellees.

Before KILEY, CUMMINGS and SPRECHER, Circuit Judges.

KILEY, Circuit Judge.

■ The principal issue presented by taxpayers-intervenors is whether an IRS summons against the third party respondent Bank for production of Bank records should be enforced where an IRS Special Agent entered the investigation of taxpayers' civil liability, thus raising the possibility of their subsequent criminal prosecution. The district court, 322 F.Supp. 986, resolved the issue in favor of enforcement of the summons. We affirm, on authority of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

The summons,[1] issued by Special IRS Agent Wills (Intelligence Division), directed the Bank to produce various Bank records, allegedly kept by the Bank, and containing information essential to a determination of taxpayers' income tax liability for the years 1966, 1967 and 1968. The Bank refused to comply and this proceeding to enforce compliance followed.[2]

---

1. 26 U.S.C. § 7602 (1967) reads in pertinent part as follows:

For the purpose of . . . determining the liability of any person for any internal revenue tax . . . the Secretary or his delegate is authorized—

\* \* \* \* \*

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem

proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. 26 U.S.C. § 7402(b) reads as follows:

(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the

The court issued a show cause order. The Bank filed no response, but the taxpayers, with leave of court,[3] intervened and filed an answer. They asserted, *inter alia*, that the records sought by the summons were the taxpayers' "sole and private property" and that the sole purpose of the summons was to gather evidence for subsequent criminal prosecution of taxpayers. Subsequently, taxpayers conceded that the records sought belonged to the Bank.

The essential position of the taxpayers in the district court was that the summons issued for the sole purpose of gathering evidence for "ultimate" criminal prosecution and was therefore improperly issued in bad faith. They sought to develop this theory by use of a notice to take depositions of revenue agents who had preceded Special Agent Wills' entrance into the investigation. The nub of the intended deposition testimony was that taxpayers' civil liability for the years 1965–67 was under investigation at the time. Agent Wills entered the investigation in January 1969; and that his issuance of the summons for the Bank's 1966–68 records (thus eliminating the 1965 records from the investigation) shows that the investigation from that point forward was solely to gather evidence to prosecute taxpayers for tax evasion.

The district court ordered a hearing on the petition to enforce the summons. In spite of a stipulation between attorneys that the hearing would be limited to the question whether the depositions should be allowed, both sides introduced evidence bearing on the merits of the petition.

At the hearing Wills testified that the investigation of civil liability was still under way by the IRS audit division when he was assigned to the case; that the case as originally assigned to him included the years 1966–67, but that it was then expanded to include the year 1968 because it was possible that income unreported in 1966–67 might carry over to 1968; that he entered the case because of "possible criminal behavior;" that an audit of the tax liability would necessarily precede a recommendation by him of criminal prosecution; that he performed certain "audit functions;" that any recommendation for prosecution would be based on his report which would follow completion of the investigation; and that the investigation was not completed and the report not yet filed.

Taxpayers did not testify at the hearing. Their defense was in a cross-examination of Wills in support of their defense theory. They also relied on Reisman et al. v. Caplin et al., 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), for the proposition that since the investigation by Agent Wills into "criminal behavior" was an improper purpose, the summons was not issued properly in good faith. On December 19, 1970, the district court denied the taxpayers' motion to depose the IRS agents, and granted the petition to enforce the summons. On February 12, 1971, the taxpayers moved the district court to stay its enforcement order, pending appeal to this court. In arguing the motion, taxpayers' attorney conceded that *Donaldson* (decided by the Supreme Court a few weeks earlier, on

---

district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
26 U.S.C. § 7604(a) also contains substantially the same language.

3. The government had no objection to the taxpayers' motion to intervene. At that

time the Supreme Court had not yet decided *Donaldson (supra)* and the controlling Seventh Circuit case was United States v. Benford, 406 F.2d 1192, 1194 (7th Cir. 1969), which held "with respect to I.R.S. inquisitorial summonses that the person whose tax liability is the subject of the investigation can intervene and challenge enforcement if he sees fit."

Under *Donaldson*, the taxpayers would have had no right to intervene.

**1252**

January 25, 1971) "pretty well took care of the *Reisman* case" and that under *Donaldson* "if the summons issued in good faith . . . of course, we have no case."

The essence of the district court's decision is that the summons issued in an investigation of civil liability with a possibility of criminal prosecution but with no criminal prosecution pending, and was accordingly issued in good faith. The record justifies the court's finding of those facts. And the pertinent rule of *Donaldson* validates the summons which issued "in good faith and prior to a recommendation for criminal prosecution." 400 U.S. at 536, 91 S.Ct. at 545. We hold that the court's judgment enforcing the summons was not erroneous.

■ Nor do we think the district court abused its discretion in quashing taxpayers' notice to take depositions. United States v. Bell, 448 F.2d 40, 42 (9th Cir. 1971). The Supreme Court in *Donaldson* expressly recognized that under F.R.Civ.P. 81(a) (3) a district court may limit the application of discovery rules in a summons proceeding. Here taxpayers' mere allegations of improper purpose in issuance of the summons were insufficient to justify the discovery sought in a proceeding of this type. United States v. Salter, 432 F.2d 697, 700–701 (1st Cir. 1970). And they did not avail themselves of the opportunity to elicit direct testimony, or testimony in cross-examination of Wills to give substance to the allegations in their answer.

Finally, since the district court determined that the summons issued in good faith, we find unpersuasive taxpayers' arguments that enforcement of the summons would violate their Fourth, Fifth and Fourteenth Amendment rights. In *Donaldson* the Supreme Court noted that "there is now no [longer a] constitutional issue" where an internal revenue summons is issued and directed to a third party bank. 400 U.S. at 522, 91 S.Ct. at 538. Here taxpayers acknowledged that the records were the Bank's. They had

neither a proprietary nor custodial interest in them. *See also* United States v. Bank of Commerce, 405 F.2d 931, 934 (3rd Cir. 1969); O'Donnell v. Sullivan, 364 F.2d 43, 44 (1st Cir. 1966); In re Cole, 342 F.2d 5, 7–8 (2nd Cir. 1965), cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). *See, e. g.*, United States v. Schoendorf, 454 F.2d 349 (decided Dec. 28, 1971, 7th Cir.).

The *Donaldson* decision obviates any necessity of discussing the many pre-*Donaldson* cases cited by taxpayers on the precise issue before us. And *Donaldson* also renders unnecessary discussion of cases cited by taxpayers which do not involve summons directed at records of third persons. Here the summons was directed at the Bank, not at taxpayers, and it is conceded that the records sought were those of the Bank, not of the taxpayers.

Affirmed.