UNITED STATES of America and Burnis Brown, Revenue Agent, Internal Revenue Service, Petitioners-Appellees,

v.

Herbert E. TURNER, Respondent-Appellant.

No. 73-1193.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1973.

Decided June 12, 1973.

Rehearing Denied July 2, 1973.

Edward Kaplan, Chicago, Ill., for respondent-appellant.

Scott P. Crampton, Asst. Atty. Gen., Mary J. McGinn, Atty. Tax Div., Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., for petitioners-appellees.

Before CASTLE and MOORE*, Senior Circuit Judges, and CUMMINGS, Circuit Judge.

* Senior Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

CASTLE, Senior Circuit Judge.

Appellant Herbert E. Turner appeals from an order of the district court granting enforcement to an Internal Revenue Service summons compelling him to produce the names and social security numbers of clients whose tax returns he had prepared for 1970–1971 so that the Service could determine the accuracy of these returns.

On September 28, 1972, Revenue Agent Burnis Brown served a summons upon Turner which ordered him to produce the names, addresses and social security numbers of the persons whose income tax returns he had prepared for 1970 and 1971. Brown petitioned the district court for enforcement of the summons on December 18, 1972, alleging that he was conducting an investigation of "the correctness of income tax returns prepared by Herbert E. Turner for his customers and clients for the taxable periods 1970 and 1971. . . ." Turner's response to this petition alleged as affirmative defenses that the investigation was being conducted to obtain evidence for a criminal proceeding against him, that the summons was too vague, and that the production of the documents would violate certain constitutional rights. Turner also moved under the Federal Rules of Civil Procedure for discovery of all reports and communications stating and reflecting upon the reasons for investigating him, and he filed a notice of deposition of Agent Brown. On February 16, 1973, the district court denied the requested discovery and quashed the notice of deposition.

On February 21, 1973, the court held a hearing on the petition for enforcement of the summons at which Turner and his counsel were allowed to cross-examine the Internal Revenue agents involved with his case. Myron Braunstein, a supervisory I.R.S. agent, testified that the planned examination of the returns prepared by Turner is a facet of the Service's Tax Preparers Project, a nationwide program with three objectives: 1) the protection of uninformed and uneducated taxpayers who rely on tax preparers, 2) the identification of unscrupulous and incompetent tax preparers and the attempt to achieve their observance of the law through either warnings or prosecution, and 3) the collection of additional taxes or the refund of overpayments due on improperly-prepared returns. The principal means of deciding to investigate whether the returns compiled by a tax preparer are accurate, Braunstein testified, is through "shopping," a process by which an agent visits a tax preparer and requests the preparation of a tax return from a standard set of facts. If the I.R.S. determines that the return obtained through "shopping" is inaccurate, it may seek to find out whether this inaccuracy pervades the other returns prepared by that person. According to Braunstein, the Preparers Project is directed particularly at individuals who subscribe to no "code of professional ethics"; accordingly, attorneys, CPA's, and practitioners enrolled pursuant to I.R.S. regulations are not "shopped" to determine the accuracy of their work.

Braunstein also represented that summonses had been issued to about 175 tax preparers in the Chicago area to obtain the names of their clients after an initial "shopping" process, and that no criminal prosecution of Turner had been recommended. Even if Turner signed the returns he prepared, Braunstein said, it would be almost impossible for the I.R.S. to discover these returns among the 9.5 million filed in Chicago for the years in question without the names of the taxpayers involved.

Agent Burnis Brown testified that he was directed by his superiors to deliver a summons to Turner to obtain the names of the persons whose 1970 and 1971 returns he had prepared, and that he assured Turner that there was no criminal proceeding pending against him. Rosemary Jackson, an I.R.S. trainee who had accompanied Brown, verified his account. Although Turner's counsel had indicated that Brown had told his client when he delivered the summons

that the information was to be used in a criminal prosecution, neither Brown nor Jackson recalled any such statement.

Turner did not testify at the hearing. His counsel, however, represented to the court that his client had been subjected to harassment during previous years by the I.R.S.

The district court granted enforcement of the summons at the close of the hearing. The court delivered no opinion, but indicated in its remarks that the names of Turner's clients could be revealed without violating his privilege against self-incrimination, that the I.R.S. had a valid civil purpose in seeking production of the names, and that the respondent had not proven his affirmative defenses. The court also denied Turner's attempts to learn the name of the agent who had "shopped" him, as well as his renewed motions for discovery of documents. This court granted a stay of the district court's order pending appeal on March 2, 1973, and scheduled this case for expedited argument.

Turner poses essentially four arguments on this appeal: 1) the district court erred in drastically restricting his right to discover the motives of the I.R.S. in summoning his records, 2) the criminal purpose and self-incriminatory demands of the summons required the district court to deny enforcement of it, 3) the summons was illegally broad, and 4) the summons should have been denied because it was an instrument of government harassment.

*1) Discovery*

■ A summons enforcement proceeding, like any other civil action, is governed by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 81(a)(3). Turner argues on this appeal that the liberal discovery provisions of these rules should have been made available to enable him to gather evidence in support of his defenses to the summons. Specifically, he complains about his inability to examine any memoranda or reports related to the I.R.S.'s reasons for seeking the names of his clients.

■ Our examination of the arguments presented by Turner indicates that he seeks discovery to aid him in establishing his claims that the summons was issued to obtain evidence against him for a criminal prosecution and/or that it was issued only to harass him. These two defenses asserting the bad faith of the Internal Revenue Service will be successful only if Turner can show that prosecution has been recommended or initiated against him, or if he can negate the existence of any valid civil purpose on the part of the I.R.S. in issuing the summons. Couch v. United States, 409 U.S. 322, 326, 93 S.Ct. 611, 614–615, 34 L.Ed.2d 548 (1973), Donaldson v. United States, 400 U.S. 517, 532–533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), United States v. Moriarty, 435 F.2d 347, 359 (7th Cir. 1970). Thus, even though the summons might eventually produce criminal evidence against Turner or have harassing aspects, it may issue if it is also directed at ascertaining civil tax liabilities.

■■ The federal rules allow a district court to suspend or limit discovery pursuant to rule 81(a)(3) in the interest of obtaining an expedited disposition of a summons proceeding, 7 Moore's Federal Practice ¶ 81.01(6) at 4413 (2d Ed.1972), and our function as a reviewing court is to determine only whether the court has abused its discretion. United States v. National State Bank, 454 F.2d 1249, 1252 (7th Cir. 1972), United States v. Bell, 448 F.2d 40, 42 (9th Cir. 1971). Although the district court denied the production of government documents in this case, it did permit the in-court examination of the agents involved in summoning the names of Turner's clients. It has been recognized that such an expedited substitute for complete discovery is an acceptable alternative. United States v. National State Bank, *supra*, United States v. Bell, *supra*, United States v. Bowman, 435 F. 2d 467, 469 (3d Cir. 1970), Kennedy v. Rubin, 254 F.Supp. 190, 194 (N.D.Ill. 1966), and that unless a summoned party can introduce some evidence support-

ing his allegations of bad faith at the hearing, further discovery after the hearing may be denied. United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970).

■ Turner argues that the above-cited cases are inapposite to his situation because he seeks discovery to resist the compelled production of personal records possessed by himself and because previous cases have involved corporate records or third-party possession. We reject this distinction. It is true that Turner may be able to assert a fifth amendment defense to production of his records that is unavailable to a person holding corporate records or documents belonging to another. United States v. National State Bank, *supra*, 454 F.2d at 1252. But this defense depends upon the nature of the documents themselves rather than the reasons for which the government may wish to examine them. *See* United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). Therefore, the assertion of a fifth amendment defense by Turner does not make discovery any more important in this case so as to make its denial an abuse of discretion.

■■ Turner also has argued that the district court abused its discretion in limiting discovery because he did establish some evidence of an improper I.R.S. purpose. He cites a remark during the February 21 hearing acknowledging that the government would certainly try to indict him if the summons turned up any indications of illegal activity. We find that this remark is insufficient evidence of improper purpose to justify further discovery, for it falls woefully short of indicating that the government's only purpose was to obtain evidence against Turner for use in a criminal proceeding. Turner also complains that a limitation of discovery may shield the real purpose of the I.R.S. in delivering the summons, for the Service may produce agents at the evidentiary hearing who prevaricate, possess insufficient knowledge of the case, or who are unaware that an unrecorded decision to prosecute has been made. Of course, in limiting discovery a trial judge must be aware of the pitfalls suggested by the appellant regarding insufficient knowledge or prevarication, and should allow further discovery if the defendant raises doubts as to either. In the present case, however, Turner not only had ample opportunity to examine the director of the program under which he was investigated, but was also able to examine the two agents who performed the act of delivering the summons in an attempt to prove that they had admitted the existence of criminal charges against him. Their testimony on the valid civil purpose of the investigation, as well as their representation that no prosecution against Turner had been recommended, Donaldson v. United States, *supra*, 400 U.S. at 532–534, 91 S.Ct. 534, provided ample justification for the limitation of discovery.

We conclude, therefore, that the district court did not abuse its discretion in limiting discovery.

*2) Protection Against Self-Incrimination*

Turner has also interposed the defense that the production of the names and social security numbers of his clients will violate his fifth amendment privilege against self-incrimination. The district judge rejected this defense, intimating that the revelation of the persons for whom Turner conducted a tax preparation business would not be incriminating and was therefore not protected by the fifth amendment. The government supports this theory on appeal, and also argues that the I.R.S. could require the production of tax information from Turner without violating his fifth amendment rights because he is not a member of a "highly selective group inherently suspect of criminal activities." Albertson v. Subversive Activities Control Board, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). It emphasizes that tax preparation is a legitimate undertaking and that the summons is

primarily directed at determining whether any readjustments must be made in the tax liabilities of Turner's clients because their returns for 1970 and 1971 contain inaccuracies. Turner, on the other hand, submits that the fact that a summons was directed at him proves that he was a member of a "highly suspect group" and that the government is investigating him to uncover criminal activities. Therefore, he argues, the production of the names of his clients will facilitate the government's tasks of withdrawing from its files the returns which he prepared and of gathering criminal evidence against him.

■ At issue, then, is the conflict between a government's demand for information for the ostensible purpose of operating a legitimate regulatory scheme and the individual's interest in privacy. Our determination whether the information sought from Turner is protected by his fifth amendment privilege against self-incrimination requires a balancing of these competing interests. California v. Byers, 402 U.S. 424, 427, 91 S.Ct. 1535, 29 L.Ed.2d 9 (plurality opinion) and 454, 91 S.Ct. 1535 (Harlan, J. concurring). Although the history and policies supporting the privilege against self-incrimination provide little guidance to aid the balancing process (*compare* Murphy v. Waterfront Comm'n, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) with Schmerber v. California, 384 U.S. 757, 762–763, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and California v. Byers, *supra,* 402 U.S. at 450, 91 S.Ct. 1535 (Harlan, J. concurring)), our examination of past cases involving a conflict between regulatory schemes and the privilege against self-incrimination indicates that consideration must be made of both the nature of disclosure required and the regulatory purpose for which it is required. *See* California v. Byers, *supra,* 402 U.S. at 254, 91 S.Ct. 1535 (Harlan, J. concurring), Marchetti v. United States, 390 U.S. 39, 44–49, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), Albertson v.

Subversive Activities Control Board, *supra,* 382 U.S. at 77–79, 86 S.Ct. 194.

■ The disclosure required from Turner is vastly different from the information which has been protected by the fifth amendment from compelled disclosure in other regulatory cases. First, the disclosure of the names of persons whose tax returns one has prepared, although helpful to the government in locating the returns filed by these persons, certainly does not involve a substantial risk of self-incrimination similar to the virtual admissions of criminal activity compelled by the government.in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) or Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). *Cf.* Williams v. Florida, 399 U.S. 78, 90 S. Ct. 1893, 26 L.Ed.2d 446 (1970) (The fifth amendment does not protect compelled production of names of persons expected to support alibi defense at trial despite the possibility that production will supply leads for obtaining evidence against defendant.). At this stage of the proceedings it is impossible to determine what information the disclosure of the names will lead to; it may be that the government will find few significant errors, or that Turner merely fears the disclosure to his clients that he made mistakes in preparing their tax returns. United States v. St. Pierre, 128 F.2d 979, 980–981 (2d Cir. 1942), *cf.* Malloy v. Hogan, 378 U.S. 1, 13, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Even if the disclosure of the names will enable the government to locate the returns prepared by Turner and to determine that they are inaccurate, the government must still bear the burden of making the main evidentiary case against Turner as a willful violator of the internal revenue laws. California v. Byers, *supra,* 402 U.S. at 457–458, 91 S.Ct. 1535 (Harlan, J. concurring.). Secondly, the nature of the evidence sought from Turner does not indicate that he had an expectation of protected privacy or confidentiality which the fifth amendment would pro-

tect. Couch v. United States, *supra,* 409 U.S. at 335–336, 93 S.Ct. at 619. As a condition of engaging in the business of preparing tax returns, Turner was required to sign his name to all returns he prepared. 26 C.F.R. § 1–6065–1(b) (1970). This requirement undoubtedly created the expectation that the government would learn of his responsibility for the preparation of the information contained in them. Without considering whether Turner's signing of the returns (if he did comply with the requirement) amounted to a waiver of his fifth amendment privilege or fell under a public document/required record exception to the privilege against self-incrimination, we note that compelling Turner to resubmit information that he already has supplied is certainly less of an encroachment upon the human personality than securing admissions of criminal activity under the threat of criminal penalties.

■ Our evaluation of the regulatory scheme involved indicates that the government has a legitimate purpose in seeking the determination of tax liability of those whose returns Turner may have incorrectly prepared. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). In cases such as Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), the government asked for certain persons to admit activity which was arguably unlawful under either federal or state statutes. Because the Court realized that these admissions would "substantially increase the likelihood of . . . prosecution" under these statutory schemes, Haynes v. United States, *supra,* 390 U.S. at 97, 88 S.Ct. at 730, and because the Court perceived that the regulatory scheme was basically criminal, it held that disclosure could be refused on the basis of the privilege against self-incrimination. Albertson v. Subversive Activities Control Board, *supra,* 382 U.S. at 79, 86 S.Ct. 194. In the instant case, the summons is directed at an essentially civil area of inquiry—the determination of the civil tax liabilities of Turner's clients—where the revelation of clients' identities will pose only a "mere possibility of incrimination" that is insufficient to defeat the strong policies in favor of disclosure. California v. Byers, *supra,* 402 U.S. at 428, 91 S.Ct. 1535, United States v. Sullivan, *supra.* We hold, then, that Turner cannot invoke his privilege against self-incrimination to refuse to produce the records demanded by the summons.[1]

### 3) *Protection Against Unreasonable Seizures*

Turner argues that the summons violates his fourth amendment protection against unreasonable searches and seizures because, being outside the scope of 26 U.S.C. § 7602 (1970), it is illegal. He contends that the summons is too broad because it is a fishing expedition seeking to examine the returns of all of his clients, and that it is legally insufficient because it fails to name the persons whose returns are to be examined pursuant to that statute.

■ The Internal Revenue is given broad summons power under 26 U.S.C. § 7602 which provides, in part:

For the purpose of ascertaining the correctness of any return, . . . the Secretary or his delegate is authorized—

---

1. The government argued in the district court that, should the disclosure of the identity of the persons for whom Turner prepared 1970 and 1971 tax returns produce incriminating information and lead to criminal charges, Turner could seek to have the evidence suppressed on the basis that it was self-incriminating. The parties have not argued this point on appeal, so we do not reach it in our disposition of this case.

(a) To examine any books, papers, records, or other data which may be relevant or material to such injury:

The power given the Internal Revenue Service under this section has been characterized as an inquisitorial power, similar to that of a grand jury. United States v. McKay, 372 F.2d 174, 176 (5th Cir. 1967). The government need only show that the records it seeks are relevant and material to its investigation, i.e., that the inspection of the desired records might throw light upon the correctness of a taxpayer's return. United States v. Shlom, 420 F.2d 263, 265 (2d Cir. 1969), cert. denied, 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). We find that the Internal Revenue Service made such a showing of materiality and relevancy to justify production of Turner's records. Supervisor Braunstein testified that the "shopping" process disclosed that Turner prepared an incorrect return and that his performance caused the Service to suspect the correctness of the other returns he prepared for his clients in 1970 and 1971. The Service need not demonstrate probable cause to suspect inaccuracies, United States v. Powell, 379 U.S. 48, 51, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), nor need it specifically name in the summons the persons whose returns it wishes to examine, DiPazza v. United States, 415 F.2d 99, 103 (6th Cir. 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971), Tillotson v. Boughner, 225 F.Supp. 45, 46 (N.D.Ill.1963), aff'd, 333 F.2d 515 (7th Cir.), cert. denied, 379 U.S. 913, 85 S.Ct. 260, 13 L.Ed.2d 184 (1964), for a "John Doe" summons is sufficient. United States v. Theodore, 347 F.Supp. 1070, 1075 (D.S.C.1972). We find that the government made a sufficient showing of its reasons to scrutinize the tax returns of particular unnamed persons and to redetermine their tax liabilities, cf. United States v. Humble Oil & Refining Co., 346 F.Supp. 944, 947 (S.D.Tex.1972), to satisfy the requirements of materiality and relevancy imposed by 26 U.S.C. § 7602.

*4) Protection Against Harassment*

Turner has also objected that the summons was served upon him as part of a continuing program of I.R.S. harassment against him. At the hearing on February 21 his counsel represented that Revenue Agents had investigated Turner several times in past years and that Turner had been barred from practice as an unenrolled tax preparer six or seven years ago under questionable circumstances. Turner did not take the stand to testify to these facts.

We find that this defense does not negate the valid civil purpose of the government for examining the returns of people other than Mr. Turner. The law gives no immunity to any person from investigation to determine the competency of his tax computations. United States v. Learner, 298 F.Supp. 1104, 1108 (S.D.Ill.1969). The circumstances of this case justify further I.R.S. efforts to determine the accuracy of Turner's tax computations.

The order of the district court granting enforcement of the subpoena is affirmed.

Affirmed.