

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 22, 1974

The Honorable Robert O. Smith
District Attorney
Travis County Courthouse
Austin, Texas

Dear Mr. Smith:

Opinion No. H- 265

Re: Interrelationship of
Sections 36. 02 (a) and
(b) of the Penal Code and
Article 6252-9c, The
Lobby Control Act.

Your letter requesting our opinion requires an interpretation
of Article 36. 02 of the new Penal Code, entitled "Bribery" in con-
junction with the Lobby Control Act (Article 6252-9c, V. T. C. S. ).

Section 36. 02 of the new Penal Code provides:

"(a)  A person commits an offense if he offers,
confers, or agrees to confer any benefit on a
public servant, party, official, or voter:

"(1)  with intent to influence the
public servant or party official in a
specific exercise of his official powers
or a specific performance of his official
duties; or

"(2)  with intent to influence the voter
not to vote or to vote in a particular manner.

"(b)  A public servant or party official commits
an offense if he knowingly solicits, accepts, or agrees
to accept any benefit on the representation or under-
standing that he will be influenced in a specific
exercise of his official powers or a specific performance
of his official duties.

"(c) A voter commits an offense if he knowingly accepts or agrees to accept any benefit on the representation or understanding that he will not vote or will vote in a particular manner.

"(d) An offense under this section is a felony of the third degree unless committed under Subsection (b) of this section, in which event it is a felony of the second degree."

The Penal Code provides at Section 1.07 (a) (6) that:

"(a) In this code:

. . .

"(6) 'Benefit' means anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested."

You question the fact that, apparently, the briber is guilty of the crime if he "offers, confers, or agrees to confer" a benefit with the intent to influence the recipient while the recipient, under Subsections (b) and (c), apparently commits the offense only if he acts "on the representation or understanding" that he will be influenced. You state in your letter that, in your opinion, a "representation or understanding" is a required element of the offense of bribery under Sec. 36.02(a) or else the Lobby Control Act is unconstitutional.

Both the Lobby Control Act and the Penal Code's Bribery Chapter must be read in the light of the citizen's constitutionally protected right to petition his government. See generally, U.S. v. Harriss, 347 U.S. 612 (1953), H-18 (1973). Of course, the constitutional right of petition has never been construed to include a right to commit the crime of bribery.

Bribery is defined in Article 16, Sec. 41 of the Texas Constitution:

"Any person who shall . . . offer, give, or promise, any money or thing of value . . . to any executive or judicial officer or member of the Legislature to influence him . . . shall be guilty of bribery . . . . And any member of the Legislature or executive or judicial officer who shall solicit, demand or receive . . . any money, appointment, . . . thing of value or employment, . . for his vote or official influence, . . . or with any understanding, expressed or implied, that his vote or official action shall be in any way influenced thereby . . . shall be held guilty of bribery . . . . "

Pursuant to constitutional mandate, the Legislature, in 1858, adopted Articles 158 and 159, Texas Penal Code, which, at the time of their repeal in 1973, provided:

Article 158

"Whoever shall bribe or offer to bribe any executive, legislative or judicial officer after his election or appointment, and either before or after he shall have qualified or entered upon the duties of his office, or any person employed by or acting for or on behalf of the State of Texas, any board, commission, agency, or department thereof, any county, school district, city or town, or any political subdivision or municipal corporation whatsoever, with intent to influence his act, vote, decision, judgment, or recommendation on any matter, question, cause, contract or proceeding which may be then pending, or which may thereafter be brought or come before such person in his official capacity, or in his place, agency or position of employment, or do any other act or omit to do any other act in violation of his duty as an officer, or as such employee or agent, shall be guilty of bribery and shall be confined in the penitentiary not less than two nor more than five years, or be confined in jail for not less than one month nor more than two years, or be fined not less than Five Hundred Dollars nor more than Five Thousand Dollars, or by both such fine and imprisonment."

Article 159

"Any legislative, executive or judicial officer, or any employee or agent, or person holding a position of honor, trust or profit with, or any person acting for or on behalf of, the State of Texas, any board, commission, agency or department thereof, any county, school district, city or town, or any political subdivision or municipal corporation whatsoever, who shall accept a bribe, or agree or consent to accept a bribe under an agreement or with an understanding that his act, vote, recommendation, opinion or judgment shall be done, influenced or given in any particular manner, or upon a particular side of any question, matter, contract, cause or proceeding which is or may thereafter be pending, or which may be brought or come before him in his official capacity, or in his place, agency or position of employment, or in his position of honor, trust or profit, or that he shall make any particular nomination or appointment, or shall do any other act, or omit to do any act, in violation of his duty as an officer, or his position, agency or employment shall be guilty of bribery and shall be punished as is provided in Section 1 of this Act; or any such person who shall ask, solicit or offer to accept a bribe with the intent or for the purpose of influencing his act, decision, vote, opinion or recommendation, on any question, matter, nomination, cause, proceeding or contract which may at any time be pending, or which may be brought or come before him in his official capacity, or in his employment, agency or place or position of honor, trust or profit shall be guilty of bribery and shall be confined in the penitentiary not less than two nor more than ten years, or be confined in jail for not less than one month nor more than two years, or be fined not less than Five Hundred Dollars nor more than Five Thousand Dollars, or by both such fine and imprisonment."

p. 1240

Both of these articles were repealed by the enactment of the 1973 Penal Code [Acts 1973, 63rd Leg., ch. 399, sec. 3(a)].

It is our opinion that the requirements of Articles 158 and 159 were substantially the same as those of the Constitution and those of Sec. 36.02 of the new Penal Code. In our opinion, Sec. 36.02, does not create a new crime but merely restates the law of bribery. Obviously, since it has been in effect only since January 1st of this year, there have been no reported decisions construing Sec. 36.02. However, early in the history of our state it was determined that, as to the briber, the crime of bribery was complete when the wrongful offer was made. Goldsberry v. State, 242 S.W. 221 (Tex. Crim. 1922). And Sowells v. State, 270 S.W. 558 (Tex. Crim. 1925) holding that the intent of the recipient of the bribe is of no consequence in determining the guilt of the briber. It is our opinion, therefore, that Sec. 36.02(a), Vernon's Texas Penal Code, does not require the same representation or agreement required by Sec. 36.02(b) and (c).

Of course, a conviction under Sec. 36.02(a) will require proof, inter alia, that a benefit was offered with intent to influence the public servant in a specific exercise of his official powers or a specific performance of his official duties. As a practical matter, many and perhaps most cases will depend on evidence as a means of establishing the element of intent that an understanding was reached or that there was a representation, express or implied, that the benefit was in payment for an action of the public official. However, we are not prepared to state categorically that these provide the only avenues of proving intent.

You state:

> "Therefore, if the bribery law (Sec. 36.02(a), P.D., 1974, does not require a quid pro quo agreement and the Lobby Control Act requires reporting of total expenditures as expenditures with intent to influence, then it appears that the Lobby Control Act . . . is unconstitutional."

Like bribery laws, lobby control laws did not originate with the 63rd Legislature. In 1957 the Legislature adopted two acts, later codified as Articles 183-1 and 183-2 of the Penal Code.

p. 1241

Article 183-1 (Acts 1957, 55th Leg., 1st C.S., ch. 9, p. 17) was known as the Representation Before the Legislature Act and generally regulated lobbying in that arena. Section 3 of the Act (with a number of exceptions contained in Sec. 4) listed those required to register.

"Sec. 3. The following persons shall register with the Chief Clerk of the House of Representatives as provided herein:

"(a) Any person who, for compensation, undertakes by direct communication to promote or oppose the passage of any legislation by the Legislature or the approval or veto thereof by the Governor.

"(b) Any person who, without compensation but acting for the benefit of another person, undertakes by direct communication to promote or oppose the passage of any legislation by the Legislature or the approval or veto thereof by the Governor.

"(c) Any person who, acting on his own behalf and without compensation, makes an expenditure, or expenditures, totaling in excess of Fifty Dollars ($50.00) during a session of the Legislature for direct communication as defined in Section 2(e) above. "

It required certain information of the registrants (Sec. 5) and provided:

"Sec. 6. Each person so registering, or required to register hereunder, shall, between the first and fifteenth day of each calendar month, succeeding a month during any part of which the Legislature is in session, so long as his activity continues, file with the Chief Clerk of the House of Representatives, a signed, written report, under oath, giving the total expenditures made by him during the preceding month, or part thereof, for direct communication, as that term is defined herein in Section 2(e); provided, however, that expenditures of the

registrant for his personal sustenance and office
expense, clerical help, lodging and travel, need
not be included in such reports.  Entertainment
expense for direct communication as that term
is defined herein in Section 2(e) shall be reported.
. . . "

Article 183-1, V. T. P. C., was expressly repealed by Sec.  15
of the  Act adopting Article 6252-9c, the new Lobby Control Act (Acts
1973, 63rd Leg., ch. 422, p. 1096).  On the other hand,  Article 183-2
of the Penal Code (Acts 1957, 55th Leg., 1st C. S., ch.  12, p. 30) was
not repealed.  Instead, the Act adopting the new Penal Code  (Acts 1973,
63rd Leg., ch. 399) in its Sec.  5, transferred this  and other unrepealed
articles to the civil statutes where it now appears as Article 6252-23,
V. T. C. S.  It calls for the regulation of lobbying before state agencies
and requires those who engage in such practice to register (Sec. 2)
but does not require any report of expenditures.

Article 6252-9c,  V. T. C. S.,  covers lobbying before  both legislative
and executive offices.  Like former Article 183-1,  V. T. P. C. , it required
not only registration but also the filing of an activities report.

"Sec.  6.  (a)  Every person registered under
Section  5 of this Act shall file with the secretary a
report concerning the activities set out in Sub-
section (b) of this section.  The report must be
filed:

" (1)  between the 1st and 10th day of each month
subsequent to a month in which the legislature is
in session covering the activities during the previous
month; and

" (2)  between the 1st and 10th day of each month
immediately subsequent to the last month in a
calendar quarter covering the activities  during the
previous quarter.

" (b)  The report shall be written, verified, and contain the following information:

" (1)  the total expenditures made by the registrant for directly communicating with a member of the legislative or executive branch to influence legislation, including expenditures made by others on behalf of the registrant for those direct communications if the expenditures were made with his express or implied consent or were ratified by him.   Such report shall include a breakdown of expenditures into the following categories:

> (A)  postage and telegraph;
> (B)  publication and advertising;
> (C)  travel and fees;
> (D)  entertainment;
> (E)  gifts, loans, and political contributions; and
> (F)  other expenditures;

" (2)  a list of legislation supported or opposed by the registrant, by any person retained or employed by the registrant to appear on his behalf, or by any other person appearing on his behalf, together with a statement of the registrant's position for or against such legislation.

" (c)  Each person who made expenditures on behalf of a registrant that are required to be reported by Subsection (b) of this section or who has other information required to be reported by the registrant under this section or Section 5 shall provide a full, verified account of his expenditures to the registrant at least seven days before the registrant's report is due to be filed. "

Your statement that the Act would be unconstitutional is based upon your conclusion that the reporting requirement would involve self incrimination, and you cite to us Albertson v. Subversive Activities Control Board, 382 U.S. 70 (1965); Marchetti v. United States, 390 U.S. 39 (1968); Grosso v. United States, 390 U.S. 62 (1968); Haynes v. United States, 390 U.S. 85 (1968); Leary v. United States, 395 U.S. 6 (1969); and California v. Byers, 402 U.S. 424 (1970).

Albertson involved an order of the Subversive Activities Control Board, requiring individuals to register as communists, a crime under the Smith Act (18 U.S.C. 2385); Marchetta was convicted of failing to register and pay a tax on the business of accepting wagers, itself illegal; Grosso involved the failure to pay an excise tax imposed on wagers where compliance would have involved self incrimination; Haynes involved self incrimination in registering a sawed-off shotgun; Leary was a prosecution, inter alia, for failing to pay a transfer tax on marijuana imported into the United States; Byers involved a hit-and-run statute requiring a driver involved in a motor vehicle accident to stop and give his name and address.

The Byers case, unlike the others, upheld the questioned statute. Referring to the above cases which you have cited, Chief Justice Burger said:

> " . . . In each of these cases the Court found that compliance with the statutory disclosure requirements would confront the petitioner with 'substantial hazards of self-incrimination' . . . "

> "In all of these cases the disclosures condemned were only those extracted from a 'highly selective group inherently suspect of criminal activities' and the privilege was applied only in 'an area permeated with criminal statutes' - - not in 'an essentially noncriminal and regulatory area of inquiry' ". (402 U.S. at 430)

And see United States v. Sullivan, 274 U.S. 259 (1927); United States v. Turner, 480 F.2d 272 (7th Cir. 1973); United States v. Daly, 481 F.2d 28 (8th Cir. 1973).

Your suggestion that a person registering as a lobbyist, i.e., as having made expenditures to directly communicate with a member of the legislative or executive branches of the government to influence legislation, would incriminate himself under Chapter 36 of the Penal Code seems to assume that lobbying and bribery are one and the same. We disagree.

Much like the information contained in an income tax return, the expenditure disclosures required by the Lobby Control Act are essentially neutral. The expenditures required to be reported, i. e., postage and telegraph; publication and advertising; travel and fees; entertainment; gifts, loans, and political contributions; and other expenditures are in themselves non-criminal. The mere listing of them would not establish the offense of bribery and would not be self-incriminating. Lobby laws cannot be reasonably classified as "an area permeated with criminal statutes." Rather, such laws deal with "an essentially non-criminal and regulatory area of inquiry." Lobbyists do not constitute a "highly selective group inherently suspect of criminal activities," as used in California v. Byers, supra. Lobbying is practiced by many and diverse individuals and groups not only having legitimate goals but also exercising legitimate and legal methods. It is only when the lobbyist exceeds the customary and traditional bounds of "lobbying" and attempts to confer the benefit with the intent that the benefit so conferred will determine specific action that he subjects himself to prosecution for bribery. Bribery, on the other hand, connotes and has always connoted the concept of corrupt payment for an official act done or to be done with the corrupt intent to influence the specific action of a public official by virtue of such payment. Bribery is the giving of benefit with the intent that the benefit will determine specific action of the other person. Bribery is illegal, criminal and immoral activity. Lobbying, a long recognized and usually organized form of petitioning one's government, is a legal activity and expenditures made in connection therewith are legal unless coupled with the essential elements of the offense of bribery, i. e., the intent to influence the public servant in a specific exercise of his official duties by the conferral of a "benefit" as that term is defined in § 1.07(a)(6) of the Penal Code. We entertain no doubt, therefore, that the Texas Legislature in enacting the foregoing statutes intended to deal with two separate and distinct public matters, i. e., penal provisions to keep bribery a criminal offense and the reporting provisions of Article 6252-9c to require the reporting of legal lobby expenditures.

## SUMMARY

The requirement of Article 6252-9c, V. T. C. S. , the Lobby Control Act, that periodic statements be filed of expenditures made to directly communicate with members of the Legislative and Executive branches to influence legislation, is not rendered unconstitutional by virtue of the fact that such expenditures could constitute bribery if coupled with the intent to influence the public servant in a specific exercise of his official duties by the conferral of a "benefit" as that term is defined in § 1.07(a)(6) of the Penal Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee