**UNITED STATES of America,
Petitioner,**

**v.**

**Allen WILLIAMS, Executive Director of the New York State Psychological Association, Inc., 145 East 52nd Street, New York, New York, Respondent.**

**v.**

**Rudolph Wittenberg, Intervenor.**

**No. M-18-304.**

United States District Court,
S. D. New York.

Dec. 15, 1971.

———◆———

Whitney North Seymour, Jr., U. S. Atty., by Peter Alan Herbert, Asst. U. S. Atty., New York City, for petitioner.

C. Stewart Dickert, Mariano, Lloyd & Dickert, New York City, for respondent.

Jay H. Topkis, Neil H. Cogan, Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for intervenor.

MOTLEY, District Judge.

*Memorandum Opinion*

The government petitions pursuant to 26 U.S.C. §§ 7402(b) and 7604(a) to enforce an Internal Revenue Service summons issued for the purpose of determining the tax liability of intervenor Rudolph Wittenberg for the years 1966, 1967 and 1968. In 1969, as a result of an independent investigation, the IRS claims to have discovered that certain checks paid to Wittenberg, a practicing psychologist, were not reported on his returns for the years 1966–68. As a result, the taxpayer reviewed his records and filed amended returns for those years showing higher income than was originally reported.

The IRS, seeking to independently verify the amended returns, requested a list of Wittenberg's patients for the years in question. Wittenberg refused to comply with this request, presumably relying on his Fifth Amendment privilege against self-incrimination. See *e. g.*, Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1885); 8 Wigmore, Evidence § 2264 (McNaughton rev. 1961).

Instead, he offered the IRS the following arrangement, on the condition that they not contact any of his patients. First, he would furnish the IRS with a complete list of his patients. The IRS could check the returns filed for 1966–68 by those patients, many of whom will have itemized their payments to Wittenberg. For those patients whose returns do not reflect the fees paid him, Wittenberg offers to obtain signed, notarized statements setting forth the amount of their payments. Finally, under Wittenberg's plan, the IRS could then check this collection of patients' tax returns and sworn statements against his records to see that data had been obtained from all patients.

The government balked at employing a procedure it saw as "permitting a taxpayer to serve as his own revenue agent." It therefore served a subpoena on Allen Williams, director of the New York State Psychological Association, Inc. (Association). The Association has a telephone answering service for many of its members, including Wittenberg, and the IRS ordered Williams to produce "all records of your telephone answering service showing details of telephone messages" for Dr. Wittenberg for the years 1966, 1967, 1968. Williams appeared and testified that the only message slips still retained by the answering service were those "from early September until about the middle of December 1969," about sixty slips. Those are the documents at issue here.

Williams refused to hand over these message slips, asserting Wittenberg's psychologist-patient privilege under state law. As an intervenor, Wittenberg also contends that enforcement of the IRS subpoena would breach a psychologist-patient privilege. Questions of privilege in a federal income tax investigation are matters of federal law. Colton v. United States, 306 F.2d 633, 636 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The psychologist-patient privilege, if one exists, would be a form of doctor-patient privilege. There are numerous cases holding that no doctor-patient privilege existed at common law. See *e. g.*, United States v. Mullings, 364 F.2d 173, 176 at n. 3 (2d Cir. 1966); Barnes v. United States, 374 F.2d 126 (5th Cir. 1967), cert. denied, 389 U.S. 917, 88 S.Ct. 246, 19 L.Ed.2d 273 (1967); Aetna Life Insurance Co. v. Gordy, 248 F.2d 129 (8th Cir. 1957). The privilege therefore does not apply in federal courts in the absence of statute. United States v. Mullings, *supra*; but see In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir. 1953) (dictum), cert. denied, 347 U.S. 960, 74 S.Ct. 709, 98 L. Ed. 1104 (1954). However, in the view we take of the case, we need not decide the status of the psychologist-patient privilege at federal law, nor whether this subpoena would breach that privilege. We find enforcement of this subpoena to be unreasonable under the In-

ternal Revenue Code and the Fourth Amendment.

■ The test to be applied to IRS subpoenas under § 7602, read in light of Fourth Amendment strictures against unreasonable searches and seizures, is set out in United States v. Harrington, 388 F.2d 520, 523 (2d Cir. 1968):

> Although the Fourth Amendment . . . does not require of judicially enforceable summonses so stiff a standard as probable cause, the Government may not exercise its investigative and inquisitorial power without limit—the examination is 'unreasonable' and impermissible if it is overbroad, 'out of proportion to the end sought,' or if it is 'so unrelated to the matter properly under inquiry as to exceed the investigative power.' (Citations omitted)

IRS's subpoena of Wittenberg's message slips for September to December 1969 is first of all overbroad. We may recognize that listed on the slips in 1969 will be some patients who were not seeing Wittenberg in 1966–68. Since the message service intercepted all calls to Wittenberg, there will also be persons who were not patients but social and professional acquaintances of Wittenberg. It will obviously not be apparent from the names alone which persons were his patients during the years in question. Therefore, all persons who left messages must be questioned about the nature of their contact with Wittenberg in 1969.[1]

The burden such questioning would impose on Wittenberg's patients would be fairly great. Though there may be some question of whether a doctor-patient privilege would apply here, the court may recognize the displeasure a psychologist's patients would feel at the disclosure of the fact of their treatment and government questioning about the extent and cost of their visits. This burden will fall on some patients in 1969 who had no contact with Wittenberg in 1966–68.

■ The fact that much of the material sought by the IRS will be irrelevant or its delivery burdensome is, by itself, no ground for refusing enforcement if the category of documents as a whole might shed light on the correctness of the return. United States v. Acker, 325 F.Supp. 857 (S.D.N.Y.1971). Here, however, even if the IRS received the materials it seeks, it would not be substantially closer to computing Wittenberg's tax liability for the years in question. The situation here thus differs from that in United States v. Acker, *supra*, where, though the IRS sought much material that would probably prove to be irrelevant, its request as a whole would almost certainly advance the tax inquiry.

In terms of the *Harrington* standard, the IRS subpoena is out of proportion to the end sought, in that the material sought will be of little or no benefit to checking the accuracy of Wittenberg's returns without additional information the IRS cannot obtain. The IRS seeks to compile a list of fees paid Wittenberg by his patients in order to compare this total with the income he reported on his amended returns for the years 1966–68. To make this comparison the IRS needs records of the payments of most, if not all, his patients. It is clear that the message slips for four months in 1969 would not come close to providing a comprehensive list of his 1966–68 patients. More probably, they would reveal only a small fraction of his patients for the years in question. There is no chance that all of his patients for 1966–68 called and left messages during September through December 1969. In fact, it is highly unlikely that the majority of even his 1969 patients would be included on the 1969 message slips in issue.

Information from the patients on the 1969 message slips, without more, would

---

1. The Second Circuit stated in United States v. Harrington, *supra*, 388 F.2d at 523:

"[J]udicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation."

not be a basis for comparison with Wittenberg's returns. The IRS would need a virtually complete list of patients in order to determine the total amount of Wittenberg's fees for each year. It has made no showing, however, as to how it will get these data. Obviously, Wittenberg himself will not be a source of a list of his patients. Without the rest of the names, any information gleaned from persons on the 1969 message slips will be useless in checking the accuracy of Wittenberg's returns for 1966, 1967 and 1968.

The IRS has therefore not shown that its subpoena is more than marginally relevant to its purpose. See United States v. Powell, 379 U.S. 48, 58, 85 S. Ct. 248, 13 L.Ed.2d 112 (1964). In light of the burden on third parties that use of the requested message slips will impose, enforcement of this subpoena would not meet the standard of reasonableness set forth in United States v. Harrington, *supra*. The motion to enforce the subpoena is denied without prejudice to its renewal upon a showing that the message slips have become relevant to an inquiry into the accuracy of Wittenberg's returns.

So ordered.