**UNITED STATES of America and Albert J. Valentas, Internal Revenue Agent,**

v.

**HUMBLE OIL & REFINING COMPANY.**

Misc. No. 71–H–35.

United States District Court,
S. D. Texas,
Houston Division.

June 29, 1972.

Anthony J. P. Farris, U. S. Atty., and Theo. W. Pinson, III, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Walter B. Morgan, Houston, Tex., for defendant.

## DENIAL OF ORDER TO ENFORCE SUMMONS

SINGLETON, District Judge.

On November 15, 1971, the Internal Revenue Service through a duly authorized agent served an administrative subpoena[1] on the Humble Oil & Refining Company in Houston, Texas. The subpoena stated that it was in the matter of the tax liability of John Doe and commanded Humble Oil & Refining Company as follows:

"To produce records of Humble Oil & Refining Company for the calendar year 1970 concerning mineral leases surrendered during the year without production obtained on the leasehold, such records to show the following facts:

Name, address and social security number of lessor.

Amount of lease bonus.

Month and year lease executed.

Legal description of the property leased.

The above information is requested only for leases where the lease bonus exceeded $10,000."

Humble Oil & Refining Company refused to comply with the subpoena, and on December 8, 1971, the Internal Revenue Service through the United States Attorney filed a petition to enforce this summons. Among other allegations, the petition alleged:

"The summons was issued for the purpose of testing compliance in the area of restoration of depletion by lessors of leases surrendered by Humble Oil & Refining Company without production.

"The summons was issued in re the tax liability of persons unknown for the purpose of canvassing the internal revenue district to inquire after and concerning all persons who may be liable to pay internal revenue tax by reason of the requirement that lessors restore depletion upon surrender of leases by lessee, Humble Oil & Refining Company, without production, all as directed and authorized the Secretary or his delegate under Sections 7601 and 7602, Internal Revenue Code of 1954."

The petition prayed that a show cause order be issued by the court directing Humble Oil & Refining Company to appear and show cause why it should not be directed by the court to comply with the summons.

A show cause hearing was held on December 21, 1971, and the court denied the petition of the Internal Revenue Service to enforce compliance with the administrative summons.

The answer of Humble Oil & Refining Company alleged among other things that the summons was fictional, constituted an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution, if enforced, in that there was no specific taxpayer under investigation and no specific event that would give rise to such an investigation and that such summons was arbitrary, unreasonable and constituted an unwarranted invasion of the personal liberty of Humble Oil & Refining Company to be secure in its records, papers, and effects and of its confidential business relationships with its lessors. Humble Oil & Refining Company also alleged in its answer that the enforcement of the summons

1. Appendix A

would impose a substantial economic burden directly on Humble Oil & Refining Company.

At the hearing, it was represented to the court that the Internal Revenue Service did not have any taxpayer under investigation insofar as the summons was concerned. The agent for the Internal Revenue Service testified in substance that he was working with a group of other agents whose purpose was to do research and gather information in local industry and business practices under investigation in order to keep the district director informed as to what is occurring in the immediate community in order to allow the Internal Revenue Service to keep up-to-date on its tax enforcement. The agent further testified that one of the researched areas indicates that there might be possible noncompliance with tax laws. In this connection, the Internal Revenue Service agent testified as follows in answer to the question propounded to him by the United States Attorney:

"That's right. One of the areas, through the research that was done that indicated there might be possible noncompliance with tax laws, was this restoration of oil depletion from the standpoint that a lease bonus may be paid anywhere from a year to five years prior to the time the lease expires on the same—well, the lease expires.

"That person, when he gets the lease bonus, is entitled to depletion allowance, twenty-seven and a half percent. Now, if that lease is surrendered or retired without any production, the taxpayer is required to restore that depletion.

"Now, this period of time, from the time of getting the lease bonus to the time that the lease might have to be —or leases expired—as I say, it could range anywhere from one to five years and it's quite possible that people, for many reasons, would forget to restore this depletion. So there's a potential here that this depletion is not being restored.

"And one of the areas, then, that we want to determine is whether this is the case. And if it is the case, then we would have to make some recommendations on tightening up this area." TR. pp. 11–12.

The Internal Revenue Service agent testified that the summons was not served on Humble Oil & Refining Company as a result of any audit of Humble Oil & Refining Company and that the information requested was not made by the Internal Revenue Service because of any investigation of Humble Oil & Refining Company concerning any of its practices or any alleged tax deficiency of that company. The agent further testified that the Internal Revenue Service at the time they served the summons did not have any particular lease of any particular land in question, did not have any particular lessor in question, and that its primary purpose for the service of the summons was research. He testified that the John Doe referred to in the summons was a fictional name; that the group of persons that the Internal Revenue Service had in mind was not a group of actual identifiable persons or corporations at the moment the summons was issued; and that this type of summons was "unusual" in nature.

The Internal Revenue Service based its right to issue the summons and to have same enforced upon the provisions of Title 26 U.S.C.A. §§ 7601 and 7602. Section 7601 reads as follows:

"The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed."

■■ The relative portion of Section 7602 reads as follows:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry . . .."

It is clear that the powers conferred upon the Internal Revenue Service by these statutes is broad, but it does not encompass situations such as the present one when the Internal Revenue Service does not have any taxpayer under investigation. There must be some nexus between information sought and a specific investigation of specific individuals before the government can compel third parties, at their own expense, to give information to the Internal Revenue Service.

"[The] judicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation. And so this court has held that a District Court asked to enforce a summons must determine not only whether this burden imposed is unreasonably onerous, but also whether the records sought were relevant to the investigation, not in the sense of an affirmative showing of probable cause, but 'whether the inspection sought might have thrown light upon the correctness of the taxpayer's returns.' Foster v. United States, 265 F.2d 183 (2d Cir. 1959), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed. 2d 1261 (1960). [United States v. Harrington, 2 Cir., 388 F.2d 520] 388 F.2d at 523–524." Venn v. United States, 400 F.2d 207 (5th Cir. 1968). When, as the Internal Revenue Service admits here, there is no present audit or even a contemplated audit of specific individuals, there is no controversy between the Internal Revenue Service and a taxpayer upon which the court can act. The two applicable statutes clearly indicate that Congress intended that a person or persons or particular returns be under scrutiny by the Internal Revenue Service before such a summons can be issued.

"[The] Government may not defend a failure to indicate sufficient relationship of records to the investigation solely on the basis that some chance of relevance exists or some possibility or relation remains, and no one can discern more until after examination. The personal interest cannot be so blithely brushed aside." Venn v. United States, 400 F.2d 207 at 212 (5th Cir. 1968).

To have such a relationship between the information and an investigation of a taxpayer there must first be an actual investigation of a person or an examination of a return and here there is none. Certainly, the extraordinary power of the federal district courts in this area of summons and possible contempt for failure to comply should not be used to aid an agency of the Government to obtain information in situations where no actual controversy exists between the Government and any known individual.

The above shall constitute this court's findings of fact and conclusions of law. As a result of this court's disposition of this case, this court does not find it necessary to reach the issue of whether or not the issuance of the administrative summons would bring about an unreasonable search and seizure question under the Fourth Amendment of the Constitution of the United States.

It is, therefore, ordered, adjudged, and decreed that the petition of the Internal Revenue Service to enforce the summons on Humble Oil & Refining Company be denied.

948

## APPENDIX A

**Form 2039**
(Rev. Oct. 1969)

# Sur.mons

Department of the Treasury
**Internal Revenue Service**

In the matter of the tax liability of

John Doe
_____

Internal Revenue District of _____

Period(s) _____ 1970 _____

### The Commissioner of Internal Revenue

To : Humble Oil & Refining Co.
_____

At Humble Building, 800 Bell, Houston, Texas
_____

Greetings:   You are hereby summoned and required to appear before

Me
_____
an officer of the Internal Revenue Service, to give

testimony relating to the tax liability or the collection of the tax liability of the above named person for the period(s) designated and to bring with you and produce for examination the following books, records, and papers at the place and time hereinafter set forth:

To produce records of Humble Oil & Refining Company for the calendar year 1970 concerning mineral leases surrendered during the year without production obtained on the leasehold, such records to show the following facts:

Name, address and social security number of lessor.

Amount of lease bonus.

Month and year lease executed.

Legal description of the property le ased.

The above information is requested only for leases where the lease bonus exceeded $10,000.

**Place and time for appearance:**

at    your offices, Humble Building, 800 Bell, Houston, Texas
_____

on the _____ 15 _____ day of November , 19 71 at _____ 10 _____ o'clock A.M.

Failure to comply with this summons will render you liable to proceedings in the district court of the United States or before a United States commissioner or magistrate to enforce obedience

to the requirements of this summons, and to punish default or disobedience.

**Issued under authority of the Internal Revenue Code**

this _____ Second _____ day of _____ November _____ , 71 _____

**Original**   _____Albert J Valentos_____ _____Internal Revenue Agent_____
Signature                          Title

Form 2039 (Rev. 10—69)

# Certificate of Service of Summons

(Pursuant to Section 7603, Internal Revenue Code)

I certify that I served the summons shown
on the front of this form on:

| Date | Time |
|---|---|
| 11/2/71 | 9:15 AM |

**How Summons Was Served**

☐ I handed an attested copy of the summons to
the person to whom it was directed,

_____

_____

_____

☒ I left an attested copy of the summons with the
following person at the last and usual place of
abode of the person to whom it was directed

ROGER DONNEY — CHIEF TAX ATTORNEY

HUMBLE OIL + REFINING Co

| Signature | Title |
|---|---|
| Albert J Valente | Internal Revenue Agent |

Sec. 7603

**Service of Summons**

A summons issued under section 6420(e)(2),
6421(f)(2), 6424(d)(2), or 7602 shall be served
by the Secretary or his delegate, by an attested
copy delivered in hand to the person to whom
it is directed, or left at his last and usual place
of abode; and the certificate of service signed by
the person serving the summons shall be evi-
dence of the facts it states on the hearing of an
application for the enforcement of the sum-
mons. When the summons requires the produc-
tion of books, papers, records, or other data, it
shall be sufficient if such books, papers, records,
or other data are described with reasonable
certainty.

[A6305]

Form 2039 (Rev. 10-69)