**UNITED STATES of America and Albert J. Valentas, Internal Revenue Agent, Plaintiffs-Appellants,**

v.

**HUMBLE OIL & REFINING COMPANY, Defendant-Appellee.**

No. 72–3029.

United States Court of Appeals, Fifth Circuit.

Jan. 18, 1974.

Rehearing and Rehearing En Banc Denied March 7, 1974.

———◆———

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Mary J. McGinn, Attys., Charles E. Anderson, Tax. Div., Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

Walter B. Morgan, Lee Hill, Houston, Tex., for defendant-appellee.

Before GEWIN and MORGAN, Circuit Judges, and GORDON, District Judge.

GEWIN, Circuit Judge:

██ This appeal emanates from an order denying enforcement of an Internal Revenue Service (IRS) summons issued to Humble Oil Company seeking information concerning oil leases it had executed with certain unidentified lessors. Unlike the great majority of cases in which the propriety of enforcing a summons is questioned, the IRS here attempted to employ a summons to obtain information merely as part of its *research* concerning noncompliance with certain provisions of the Internal Revenue Code. Neither Humble nor those about whom information was sought were the object of any *investigation* for noncompliance with the tax laws.[1] Because enforcement of the summons would result in an unprecedented expansion of the IRS summons power, we affirm.

I

On November 2, 1972, Internal Revenue Agent Albert Valentas issued a "John Doe" summons to Humble Oil & Refining Company, ordering it to produce the following:

[R]ecords of Humble . . . for the calendar year 1970 concerning mineral leases surrendered during the year without production obtained on the leasehold, such records to show the following facts:

Name, address and social security number of lessor.

Amount of lease bonus.

Month and year lease executed.

Legal description of property leased.

The above information is requested only for leases where the lease bonus exceeded $10,000.

The interest of the IRS in this information was spawned by the availability of tax advantages and a concomitant potential for tax abuse attendant upon the use of lease bonuses. An outgrowth of the competition between oil companies for access to oil and gas,[2] these bonuses are

---

1. The use of the term research as opposed to investigation underscores the difference between the language in sections 7601 and 7602, upon which the IRS relies.

2. *See* 3A Summers, Oil & Gas, § 586 (2d ed. 1958):

"In the earlier oil and gas leases the lessor usually acknowledged the receipt of one dollar or other nominal sum as a consideration for the lease. Such recital was undoubtedly made to satisfy the technical requirement of consideration, although both parties to the lease fully realized that the prospective rents and royalties resulting from development, and possibly the delay rentals for the privilege of extending the drilling period, were the real considerations for the lease. These last-named considerations became more or less fixed, so that if the lessor's land was fully developed and operated he could expect to receive no more from one lessee than from another. As the competition among lessees for leases upon desirable or proven oil and gas lands became keener, in order to secure desirable leases, they instituted the practice of bidding against each other by offering the lessor a cash bonus for the lease, rather than by agreeing to deliver to him, a larger proportion of the oil or gas actually produced, or to pay him the value of such larger proportion. Where the competition is great, lessees often agree to pay to lessors many thousands of dollars by way of a bonus in order to secure a desirable lease. Such

paid by the companies to the owners of mineral rights in exchange for favorable lease agreements. Where the agreement providing for a bonus possesses the attributes of a lease and where the bonus is tied to production of the mineral, the owner of mineral rights may claim a depletion allowance against the bonus. However, if he elects to do so and the lease is subsequently surrendered by the lessee without production of the mineral, he must restore the amount of depletion to his taxable income in the year the lease is surrendered.[3] The IRS was prompted to conduct its research project by the prospect of noncompliance with these restoration requirements. Humble's lessors became a subject of its inquiry.

After having been apprised of Humble's refusal to furnish the information requested, the IRS filed a petition with the district court to enforce the summons under § 7604(b) of the Internal Revenue Code.[4] At the hearing on the petition to enforce, Valentas, the only witness called by either party, testified that he was one of six agents performing research in local industry and business practices to measure tax compliance

and take corrective action if necessary. He stated further that his research indicated the possibility of lessor noncompliance with the Code requirements concerning restoration of income. The summons was issued merely to expedite the research process. Humble's lessors were not reputed to be more likely to evade the restoration requirements than those of other oil companies.[5]

In response to the petition for enforcement, Humble admitted that some leases for which bonuses had been paid were surrendered in the year in question (1970) without having been utilized for oil and gas production. Humble estimated that between one hundred and two hundred lessors were in the group of interest to the IRS and that their leases were for bonuses of approximately $5,500,000 out of a total of $74,000,000 worth of leases written off in 1970. Its objection to the enforcement of the summons was upheld by the district court.[6]

## II

The IRS based its right to issue the summons and to have it enforced upon

bonus may be paid in cash, or the payment of a portion of the sum may be deferred. Where the payment of a portion of the bonus is deferred, it is common practice for the parties to agree that the deferred portion shall be paid out of the lessee's portion of the first oil and gas produced."

3. *See* Douglas v. Commissioner of Internal Revenue, 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271 (1944).

4. 26 U.S.C. § 7604(b) (1970):
"(b) Enforcement.—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6424(d)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the

application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

5. Valentas testified that the IRS had not served summonses on Texaco, Gulf, Shell, Standard Oil of California, Standard Oil of Indiana, Atlantic Richfield Company, Mobil, Union Oil of California, or Sun Oil Company.

6. Humble's argument, that enforcement of the summons would constitute an unreasonable search and seizure, was not reached by the district court. Its opinion is reported at 346 F.Supp. 944 (S.D.Tex.1972).

the provisions of 26 U.S.C. §§ 7601 and 7602.[7]

Section 7601 reads as follows:

§ 7601. Canvass of districts for taxable persons and objects

(a) General rule.—The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

It is pursuant to this section, which imposes a duty on the IRS "to canvass and to inquire", Donaldson v. United States, 400 U.S. 517, 523, 91 S.Ct. 534, 27 L. Ed.2d 580, 585 (1971), that Valentas was conducting the research project. He sought to facilitate his inquiry by utilizing the summons power set forth in section 7602:

§ 7602. Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

■ We reiterate that Valentas concedes that at the time he issued the summons, the IRS had not initiated an investigation of any of Humble's lessors. Rather, it was merely in the process of accumulating data concerning compliance with restoration requirements. In essence, the IRS maintains that it is empowered to conscript citizens into its service to perform the function of accumulating data for its research projects.

A. Basis For the Decision

We begin our consideration of whether sections 7601 and 7602 support this contemplated use of the summons power by endeavoring to delimit the grounds upon which this case shall be decided. Humble contends both that the IRS exceeded its statutory authority when issuing the summons and that the compass of the summons was too broad to warrant enforcement. We address only the first contention.

7. Although the power of the IRS to investigate is akin to that of the grand jury in terms of its breadth, see United States v. Turner, 480 F.2d 272, 279 (7th Cir. 1973); United States v. Weingarden, 473 F.2d 454, 459 n. 9 (6th Cir. 1973); United States v. Widelski, 452 F.2d 1, 4 (6th Cir. 1971); United States v. McKay, 372 F.2d 174, 176 (5th Cir. 1967); Falsone v. United States, 205 F.2d 734, 742 (5th Cir. 1953), it differs from the grand jury's in terms of its source. The grand jury's authority is inherent, while the Internal Revenue Service's, like that of all administrative agencies, must find support in enabling legislation. Cf. United States v. Security State Bank & Trust, 473 F.2d 638 (5th Cir. 1973).

Our self-imposed restraint requires us to consider an area of the law which is not commonplace. Admittedly, a court is ill-advised to voluntarily enter relatively obscure areas of the law when settled legal concepts may be available in resolving the issue presented. Our seeming temerity is justified, however, because such settled legal concepts—the compass of the summons—may not be availing or satisfactory. Although the bifurcated attack that Humble makes has been proffered frequently with some justification, the two defensive grounds asserted are distinguishable and do have a varying impact upon the enforceability of a summons. It is hence instructive to highlight the ramifications of the two objections interposed to enforceability and to underscore the importance of the statutory authority issue in this case.

Although a summons may be "so unrelated to the matter properly under inquiry as to exceed the investigatory power", United States v. Morton Salt. Co., 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401, 416 (1950); *Cf.* United States v. Harrington, 388 F.2d 520, 523 (2d Cir. 1968); United States v. Theodore, 479 F.2d 749, 754–755 (4th Cir. 1973); United States v. Williams, 337 F.Supp. 1114, 1116 (S.D.N.Y.1971), a decision bottomed upon the second ground asserted, the scope and breadth of the summons, would have a different impact upon the petition to enforce than would one predicated upon the statutory authority ground, as we conceive it. The Fourth Circuit's decision in United States v. Theodore, *supra*, illustrates both the manner by which these two grounds converge, and their differential effect on a petition to enforce.

In *Theodore*, the court countenanced that part of a summons which required a tax preparer to produce a list of names of his clients if not otherwise available to the IRS, but refused to sanction the attempt to obtain copies of the returns the tax preparer had filed. Its reasoning was both that the language in section 7602 "only allows [the] IRS to summon information relating to the correctness of a particular return or to a particular person and does not authorize the use of open-ended Joe Doe summonses" and that the summons, as it related to copies of the return was "too broad and too vague to be enforced." United States v. Theodore, *supra* 479 F. 2d at 755. Since absent a statutory grant in the first instance, the IRS would possess no more authority to enforce an overbroad summons than one narrowly tailored to further legitimate objectives, *cf.* United States v. Morton Salt Co., 70 S.Ct. 357, 338 U.S. at 653, 94 L.Ed. at 416, one can conclude that despite the use of language bespeaking a statutory authority resolution, the Fourth Circuit relied primarily on the ground that the summons was too broad and vague to be fully enforced. Humble's objection to the fact that this is a John Doe summons, compliance with which would be burdensome, lends itself to treatment akin to that enunciated in *Theodore*.[8] But were this court to adopt

---

8. Humble alleged in its answer to the petition to enforce that the information sought in the summons was readily ascertainable from an examination of records in the offices of the city clerk, the tax assessor and tax collector, and that its production of the information sought would be burdensome. On cross-examination, Valentas maintained that an examination of land records was inadequate for IRS purposes because "Humble Oil Company did not have that many leases recorded or documents issued that were recorded." As Humble's attorney pointed out, however, this argument overlooks the fact that information was sought in furtherance of merely a research project, and hence a mere sampling of Humble leases presumably obtainable from land records, should have sufficed to enable the IRS to ascertain the degree of compliance with Code restoration requirements. Moreover, there is no indication that the sampling process should have been limited to Humble leases in view of the fact that many other oil companies held leases of a similar nature. Were we to bottom our decision solely on Humble's "burdensomeness" contentions, we would consider remanding the case to the district court for a hearing upon this issue, with Humble having the burden of proof.

Humble's burdensomeness contention is to be distinguished from a claim that the IRS already had the information in its posses-

the rationale posited in *Theodore*, Humble might still be compelled to produce the names of its lessors.[9]

Moreover, there is a salient difference between a scope of the summons issue, characteristically portrayed in *Theodore*, and the statutory authority issue as presented in the case before us. In *Theodore*, the impetus behind issuance of the summons by special agents was that they had already ascertained the tax preparer's delinquency in complying with code requirements in filing his clients' returns and hence placed him under investigation.[10] In contrast, neither Humble nor any of its lessors is under investigation for filing faulty tax returns.

Having identified the basis upon which the case is to be decided, we consider the applicable law and the contentions advanced by the IRS in support of its issuance of the summons.

B. Research—Investigation Dichotomy

■ Although the summons power provisions of the Internal Revenue Code are to be liberally construed,[11] a court must be careful to insure that its construction will not result in a use of the power beyond that permitted by law. Justice Harlan acknowledged as much in United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 120 (1964): "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused."[12]

The IRS maintains that the accommodation between the broad powers given under section 7602 and the need to prevent the abusive use of the judicial process was struck in United States v. Powell, *supra,* where the Supreme Court, in rejecting the contention that probable cause was a precondition to the enforcement of a summons, announced that the Commissioner:

> must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that

sion in the form of returns filed. Had Humble proffered this argument in its answer to the petition to enforce, then the obligation would be "upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item." United States v. Theodore, *supra* 479 F.2d at 755.

9. A panel of this court has recently subscribed to the Seventh Circuit decision in United States v. Turner, *supra,* and that part of the Fourth Circuit opinion in United States v. Theodore, *supra,* which held that a summons seeking the names, addresses and social security numbers of clients and customers of a tax preparer was not itself overbroad or vague. *See* United States v. Carter, 489 F.2d 413 (5th Cir. 1973). Unlike in *Theodore, supra,* the *Carter* court did not remand for a determination of whether the information sought was otherwise available to the IRS, the latter being a third limitation on enforceability set forth in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Thus, were we to base our opinion upon Humble's vagueness and overbreadth contentions, *Carter* would tend

to support the proposition that the names of Humble's lessors could be obtained by the IRS.

10. *See also* United States v. Turner, 480 F.2d 272 (7th Cir. 1973); United States v. Widelski, 452 F.2d 1 (6th Cir. 1971); United States v. Berkowitz, 355 F.Supp. 897 (E.D. Pa.) aff'd, 488 F.2d 1235 (3rd Cir. 1973).

11. *See, e. g.,* United States v. Widelski, 452 F.2d 1, 4 (6th Cir. 1971); United States v. Giordano, 419 F.2d 564, 569–570 (8th Cir. 1969), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); United States v. McKay, 372 F.2d 174, 176 (5th Cir. 1967); DeMasters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963); Falsone v. United States, 205 F.2d 734, 742 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); United States v. Northwest Pennsylvania Bank & Trust Co., 355 F.Supp. 607, 614 (W.D.Pa.1973).

12. *See* United States v. Weingarden, 473 F.2d 454, 458 (6th Cir. 1973); United States v. Pritchard, 438 F.2d 969, 971 (5th Cir. 1971); United States v. Monsey, 429 F.2d 1348, 1351 (7th Cir. 1970); United States v. Michigan Bell Telephone Co., 415 F.2d 1284, 1286 (6th Cir. 1969).

the administrative steps required by the Code have been followed. . . .

United States v. Powell, 379 U.S. at 57–58, 85 S.Ct. at 255, 13 L.Ed.2d at 119. Claiming that the Commissioner has satisfied this four-fold test, and seeking to pretermit further judicial inquiry, the IRS asserts that *Powell* also precludes the interposition of any additional circumscriptions,[13] *i. e.*, a research-investigation dichotomy, upon the summons power. We have great difficulty accepting this view.

Initially, we would note that the use of the term "investigation" preceding the enunciation of the four-fold *Powell* test would support the view that it is inapposite where the investigative processes of the IRS have not already begun. The *Powell* decision, like that in United States v. Morton Salt Co., *supra*, upon which it relied, was addressed to whether the IRS may investigate merely upon suspicion, as opposed to probable cause, that the law is being violated. The probable cause-suspicion and not an investigation-research dichotomy was at issue in *Powell*.

Our conclusion that *Powell* is not the sole measure of the summons power of the IRS is buttressed by the fact that the courts have superimposed several additional constraints upon the use of this power, even when the IRS is engaged in an investigation. The prohibition against issuance of a summons, the sole objective of which is to gather information in aid of a criminal prosecution would, if the IRS position were viable, seem to be derived from the legitimate purpose element of the *Powell* test. Nevertheless, courts have uniformly refrained from treating it as subsumed within this rubric. For example, in Donaldson v. United States, *supra*, the Supreme Court evaluated a criminal purpose objection without even referring to *Powell, see* 400 U.S. at 530–536, 91 S.Ct. 534, 27 L.Ed.2d at 589–592, and in United States v. Theodore, *supra*, the Fourth Circuit entertained the same objection before passing upon Theodore's contention that the contemplated use of the summons was beyond that envisioned by the statute.[14] An additional constraint superimposed, that a summons cannot be vague or overbroad,[15] would also, under the IRS' view, invariably fall within the relevant and material requirement of *Powell*. We again discern a defect inherent in this construction because information sought by a summons can be relevant and material but yet so burden-

---

13. The IRS quotes extensively from Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) and United States v. Morton Salt Co., *supra* for support. Because the Supreme Court relied heavily on these cases in *Powell*, we do not feel that we are performing a disservice to the IRS by couching its argument in *Powell* terms. Moreover, the IRS made clear in oral argument that its position rested upon an application of *Powell*.

14. Courts have repeatedly admonished that they will not place their imprimatur upon a summons issued in order to harass an individual, *see, e. g.*, United States v. Roundtree, 420 F.2d 845 (5th Cir. 1969); United States v. Pritchard, 438 F.2d 969 (5th Cir. 1971), where a criminal charge is pending against a taxpayer, *see* United States v. White, 477 F.2d 757, 761 (5th Cir. 1973), rehearing granted en banc, 487 F.2d 1335; United States v. Stamp, 147 U.S.App.D.C. 340, 458 F.2d 759, 777–780 (1971), cert.

denied, 409 U.S. 842, 93 S.Ct. 104, 34 L.Ed. 2d 81 (1972); United States v. Bell, 448 F.2d 40 (9th Cir. 1971); United States v. Troupe, 438 F.2d 117 (8th Cir. 1971), or where enforcement would contravene the attorney-client privilege, *see, e. g.*, Reisman v. Caplan, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459, 466 (1964), or the privilege against self-incrimination. *See* United States v. Couch, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed. 2d 548 (1973); United States v. White, *supra*. Although these circumscriptions on the summons power would, like the criminal purpose limitation, conveniently fit under the legitimate purpose concept, very few courts have even cited *Powell* in applying the aforementioned proscriptions. *See* United States v. Weingarden, *supra*; United States v. Pritchard, *supra*; United States v. Roundtree, *supra*.

15. *See, e. g.*, United States v. Theodore, *supra* 479 F.2d at 754; United States v. Harrington, *supra* 388 F.2d at 523.

some to produce that enforcement should be denied.[16]

Having concluded that *Powell* does not preclude the imposition of additional constraints upon the summons power, we consider whether, as the IRS maintains the power of section 7602 is coterminous with the power to canvass and inquire of section 7601.

Our starting point is a comparison of the language contained in the two sections. Section 7601 empowers the Secretary of the Treasury or his delegate to *make inquiries* concerning all persons who may be liable to pay any internal revenue tax. Section 7602, on the other hand, authorizes the IRS to *examine* books and records for the purpose of ascertaining the correctness of any return and the making of a return where none has been filed. The distinction between a section 7601 inquiry and a section 7602 examination, though perhaps elusive when these words are viewed in a vacuum, becomes more salient when one considers first, that the inquiries are to be conducted of "all persons" while examinations are to be made of "any person", and second, that the inquiries may occur to the extent the Secretary deems it practicable and from time to time while the examination may occur for the purpose of ascertaining the correctness of any return. The language variances in these two sections amplify the attributes we ascribe to the differing IRS functions contemplated by sections 7601 and 7602 and confirm our observation that the canvass power can be employed rather cavalierly while the summons power can be utilized only when IRS scrutiny of a taxpayer or a group thereof becomes particularized or focused. We agree with the district court that "[t]here must be some nexus between information sought and a specific investigation of specific individuals before the government can compel third parties, at their own expense, to give information to the Internal Revenue Service." United States v. Humble Oil & Refining Company, 346 F.Supp. 944, 947 (S.D. Tex.1972). Before a section 7602 summons may issue, the IRS must have traversed the data gathering stage and initiated an investigation.

A contrary conclusion would require us to indulge in two untenable assumptions. The first such assumption is that the aforementioned language variances between the two sections are merely fortuitous. This explanation loses its force, however, in view of the fact that similar terminology is employed in related sections of the statute. Section 7605(b) [17] of the Code limits the IRS summons power by proscribing unnecessary *examinations* or *investigations*, as opposed to inquiries. Its relationship to section 7602 was clearly established in United States v. Powell, *supra*. The second untenable assumption is that while the IRS cannot, by issuing an expansive summons, conduct a "fishing expedition" while engaged in an investigative function,[18] it can do so pursuant to a re-

---

16. *See, e. g.*, United States v. Theodore, *supra*; In re Ryan, 430 F.2d 658, 659 (9th Cir. 1970) rev'd on other grounds, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). *See also* United States v. Dauphin Trust Co., 385 F.2d 129 (3d Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed. 2d 981 (1968) (treating expansiveness of summons as an issue distinct from *Powell* limitations).

Those courts impervious to objections to the burdensomeness of production as a basis for denying enforcement adopt the *Powell* relevant and material test as the sole measure of the compass of a summons. *See* United States v. Luther, 481 F.2d 429, 432 (9th Cir. 1973); United States v. Giordano, *su-*

*pra*; United States v. Williams, 337 F.Supp. 1114, 1116 (S.D.N.Y.1971).

17. 26 U.S.C. § 7605(b) (1970):

(b) Restrictions on examination of taxpayer.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

18. *See, e. g.*, United States v. Theodore, *supra*, 479 F.2d at 754; United States v. Dauphin Trust Co., *supra*, 385 F.2d at 131;

search project. It would indeed be anomalous to maintain that "[t]he personal interest cannot be so blithely brushed aside", Venn v. United States, 400 F.2d 207, 212 (5th Cir. 1968), in the former situation, but can be brazenly ignored in the latter.

Moreover, it is not without some significance that the IRS itself has relied upon its summons power almost exclusively when an *investigation* as opposed to a *data accumulating project* was underway. Those cases in which a summons is issued almost invariably involved a special agent, as opposed to one, like Valentas, from the auditing division of Internal Revenue.[19] And as Mr. Justice Douglas observed in his concurrence in Donaldson v. United States, 400 U.S. at 537 and n. 1, 91 S.Ct. 534, 27 L.Ed.2d at 593 and n. 1, a special agent is assigned to a case only upon an indication or allegation of criminal conduct. Thus, the IRS in its practices attendant to issuing summonses has made only a limited use of its section 7602 summons power.

Finally, while not of controlling importance, we do take note of the fact that in other areas of potential tax abuse, Congress has expressly required taxpayers to report information bearing upon the tax liability of third parties.

*See, e. g.*, 26 U.S.C. § 6049 (1970) (requiring reporting by an individual who makes payments of interest aggregating $10 or more to another person during a calendar year and by a corporation, with an outstanding bond debenture, note, etc. as to which there is during any calendar year an amount of original issue discount aggregating $10 or more). Such requirements would seem to constitute an implicit recognition that absent a particularized investigation, the IRS lacks the ability to obtain this information by other means, *i. e.*, the summons power. Needless to say, however, Congress could enact a statute imposing similar reporting requirements, if it was so inclined.

The only authority which may possibly militate against the conclusion we reach is derived from *dicta* contained in cases decided by the Seventh and Ninth Circuits, and a district court decision in United States et al. v. Clayton and Co. et al., 369 F.Supp. 6 (S.D.Miss.1973). In Tillotson v. Boughner, 333 F.2d 515 (7th Cir.), the Seventh Circuit, in dismissing an objection to a John Doe summons, remarked that "[s]ection 7601(a) of the Code authorizes the Internal Revenue Service to investigate the tax liability of taxpayers. To implement such investigation, section 7602 of the Code

---

First National Bank of Mobile v. United States, 160 F.2d 532, 534 (5th Cir. 1947); *cf.* Hubner v. Tucker, 245 F.2d 35, 41 (9th Cir. 1957); United States v. Northwest Pennsylvania Trust Co., *supra*, 355 F.Supp. at 614. *Contra* United States v. Giordano, *supra*, 419 F.2d at 568.

19. *See* United States v. Couch, *supra*; Donaldson v. United States, *supra*; United States v. Powell, *supra*; Bisceglia v. United States, 486 F.2d 706 (6th Cir. 1973); United States v. Cromer, 483 F.2d 99 (9th Cir. 1973); United States v. Turner, *supra*; United States v. Theodore, *supra*; United States v. Mid-West Business Forms, Inc., 474 F.2d 722 (8th Cir. 1973); United States v. Schwartz, 469 F.2d 977 (5th Cir. 1972); United States v. Richardson, 469 F.2d 349 (10th Cir. 1972); United States v. Pritchard, *supra*; United States v. Stribling, 437 F.2d 765 (6th Cir.) cert. denied, 402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137 (1971);

United States v. Monsey, *supra*; United States v. Davey, 426 F.2d 842 (2d Cir. 1970); United States v. Michigan Bell Telephone Co., *supra*; Venn v. United States, *supra*; United States v. Harrington, *supra*; Tillotson v. Boughner, 333 F.2d 515 (7th Cir. 1964); In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12 (2d Cir. 1962) cert. denied 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed. 2d 198 (1963); Hubner v. Tucker, *supra*; Falsone v. United States, *supra*; United States v. Berkowitz, *supra*; United States v. Jones, 351 F.Supp. 132 (M.D.Ala.1972). Our research reveals that it is only in two cases, United States v. Weingarden, *supra*, and United States v. Widelski, *supra*, that a court noted that a general agent issued the summons. In three cases, United States v. Giordano, *supra*; United States v. Clayton & Co. et al., 369 F.Supp. 6 (S.D.Miss. 1973) and United States v. Williams, *supra*, the court did not indicate whether a special or general agent was the issuer.

gives the Service broad powers of discovery." Tillotson v. Boughner, *supra*, at 516. A similar affinity between the two sections was acknowledged in De-Masters v. Arend, *supra* at 86–87. Nevertheless, whatever force the IRS position derives from these *dicta* is attenuated by the fact that both these circuits share in the disapprobation of IRS summonses so broad in scope as to amount to fishing expeditions, *see* Tillotson v. Boughner, *supra*, at 516; Hubner v. Tucker, *supra*, a disapprobation inconsistent with the countenancing of rambling explorations pursuant to research projects. Moreover, we are firm in our conviction that these *dicta* fail to accord sufficient weight to the language variances of the two sections. *See* Bisceglia v. United States, *supra*, 486 F.2d 706.

In *Clayton, supra,* the IRS sought certain designated records relating to the suppliers of soybeans to Paymaster Oil Company for a specified period. After acknowledging that the examination envisaged by the summons was exploratory in nature, the district court upheld the petition to enforce with the truncated reasoning that "[n]owhere in the act [section 7602] or any regulation having the force and effect of law is there to be found any requirement that the records sought to be examined must be records relating to the tax liability of any particular person." United States et al. v. Clayton and Co. et al., *supra*. A contrary view is expressed in Mays v. Davis, 7 F.Supp. 596 (W.D.Pa.1934) and Bisceglia v. United States, *supra*.

In Mays v. Davis, *supra*, the IRS initiated a petition for enforcement against a trust officer of the Union Trust Company to compel him to produce books, papers and records which disclosed the "names and addresses of the beneficiaries of trusts created by will where the widow, a beneficiary, has elected to take under the will . . . where the will provides for payment to her of income of the trust estate; and where income was paid to the widow" and all records showing "the name of each such

trust." As in the instant case, neither the trust officers nor an unidentified taxpayer was under investigation. In considering whether this use of the summons power comported with the predecessor to section 7602, the court stated that "to grant the prayer thereof would be to grant a mere . . . [exploratory] search for information on the part of the petitioner, and that not being within the law that the petition should be refused." Mays v. Davis, *supra*. In *Bisceglia,* the IRS issued a summons to the vice president of the Commercial Bank of Middlesboro, Kentucky which had deposited $20,000 in one-hundred dollar bills in a Federal Reserve Bank. These bills, being paper thin and apparently held for a long period of storage, were suspected of not having been reported for income tax purposes by the depositors at the Commercial Bank. It was uncontroverted that the IRS neither suspected nor was investigating a particular person or identified taxpayer but merely sought to ascertain first the depositor's identity and only then whether any income tax delinquency had occurred. In maintaining that section 7602 would not support the issuance of the summons, the Sixth Circuit reasoned that:

> In this section, Congress has not authorized the IRS to examine records pertaining to the financial affairs of an indefinite number of unspecified persons for the purpose of ascertaining the identity of one or some of those persons who may be taxpayers and liable for taxes.

Bisceglia v. United States, *supra*, 486 F.2d at 710. We believe that *Mays* and *Bisceglia* constitute the more compelling view.

### III

Thus, we hold that the Internal Revenue Service is not empowered by section 7602 to issue a summons in aid of its section 7601 research projects or inquiries, absent an investigation of taxpayers or individuals and corporations

from whom information is sought. Section 7602 simply cannot be read to give the IRS an unrestricted license to enlist the aid of citizens in its data gathering projects. A contrary conclusion would eviscerate judicial constraints upon the summons power and raise serious constitutional questions. Moreover, in view of the particular need for judicial surveillance of the summons power when the summons is directed not to a taxpayer, but to a third party, *see* Bisceglia v. United States, *supra* at 711; United States v. Harrington, *supra*, 388 F.2d at 523, quoted approvingly in United States v. Theodore, *supra*, 479 F.2d at 754; Venn v. United States, 400 F.2d 207, 211–212 (5th Cir. 1968), we feel that our decision accommodates both the legitimate personal interests of the citizenry and the need of the IRS to investigate noncompliance with the tax laws, unencumbered by obtrusive judicial monitoring.

The order of the district court, denying the petition to enforce the summons, is affirmed.