526 P.2d 1097

In the Matter of the Duty of the Idaho State Tax Commission to annually ascertain adjusted value of all taxable real property within Benewah County, State of Idaho.

State of Idaho, STATE TAX COMMISSION, Plaintiff-Appellant,

v.

FIRST SECURITY BANK OF IDAHO, N.A., ST. MARIES BRANCH, Defendant-Respondent.

Nos. 11360, 11361.

Supreme Court of Idaho.

Sept. 25, 1974.

W. Anthony Park, Atty. Gen., William McDougall, Asst. Atty. Gen., Boise, for plaintiff-appellant.

Jess B. Hawley, Jr. of Hawley, Troxell, Ennis & Hawley, Boise, for defendant-respondent.

BAKES, Justice.

The issue presented in this appeal is whether or not the State Tax Commission may enforce subpoenas to compel the disclosure of escrow documents which the First Security Bank holds as escrow agent dealing with real estate transactions in Benewah County. Two cases dealing with this issue, both involving the same parties, have been consolidated upon appeal and are decided together in this opinion. In both cases the State Tax Commission issued a summons to Dean Gentry, branch manager of the First Security Bank of Idaho, N.A., St. Maries Branch, directing that certain escrow documents in the bank's possession, or photocopies of them, be made available to the commission. The bank did not comply with the summonses, and the commission then obtained supoenas from the district court to force compliance with its demands. In both cases, the bank moved to quash the subpoenas which motions were granted by the district court. The commission appeals these rulings.

We must first examine the statutory basis for the commission's claim of authority to require this disclosure. I.C. § 33–1014 has placed upon the State Tax Commission the duty of determining the ratio between market value and assessed value of real property in each county for the purpose of enabling the State Board of Education to allocate state aid to the local school districts under the foundation program as set forth in I.C. § 33–1001 et seq. Disbursement of state moneys to the school districts under this program is adjusted ac-

cording to the rate of local property taxation, using a uniform statewide ratio between market value and assessed value of real property contained within the district, rather than by using local ratios between assessed value and market value. *See* I.C. § 33–1014. In order to insure that these funds are distributed upon the basis of a statewide rate of assessment, I.C. § 33–1014 provides that the State Tax Commission shall annually determine the ratio between market value and assessed valuation of real property in each county within the state and report its determination to each county in the state. To arrive at this determination, § 33–1014 provides in part:

> "The state tax commission shall . . . report to each county in the state all of the following data that will be used by the state tax commission in conducting such ratio study within the county:
>
> (1) sales of real property,
>
> (2) appraisals of real property."

The statutes dealing with the administration of the foundation program did not give the State Tax Commission any power to gather information concerning sale of realty by summons or subpoena. However, the statutes dealing with the general duties and powers of the state tax commission as found in I.C. § 63–501 et seq. provide as follows:

> 63–513. *Additional Powers and Duties Enumerated* [*Effective January 1, 1970*]. —In addition to all other powers and duties vested in it, the state tax commission shall have the power, and it shall be its duty:
>
> . . . . . .
>
> "(11) To require individuals, partnerships, companies, associations and corporations to furnish such information as the tax commission may require concerning their capital, funded or other debt, current assets and liabilities, value of property, earnings, operating and other expenses, taxes and all other facts which may be needful to enable the tax commission to ascertain the value and the

relative tax burden borne by all kinds of property in the state, . . .

> . . . . . .
>
> "(20) To summon witnesses to appear before it or its agents to testify and/or produce for examination such books, papers, records, or other data relating to any matter within its jurisdiction. . .
>
> . . . . . .
>
> "(22) In case any witness shall fail or refuse to appear and testify before the commission or its agents upon being summoned to appear as herein provided, the clerk of the district court . . . shall upon demand of [the commission's agent] issued a subpoena reciting the demand therefor and summoning the witness to appear and testify at a time and place fixed; . . ."

These three subsections of I.C. § 63–513, together with the above-quoted language of I.C. § 33–1014, constitute the statutory basis for the commission's claim of power to investigate the ratio between assessed and true valuation of real property within a county by issuing summonses and subpoenas for the records of real estate sales held by the bank in escrow.

The commission maintains that under I.C. § 33–1014 that it is obligated to gather data concerning the ratio of assessed valuation to market value of real property within each county in Idaho and that it is explicitly empowered to gather data concerning the sales of realty to make its determinations. It next contends that I.C. § 63–513(11) gives it the power to require the bank to reveal to the commission all escrow agreements it holds dealing with the sale of real estate in Benewah County for the years 1971, 1972 and a portion of 1973 because that subsection requires "corporations to furnish such information . . . concerning . . . facts which may be needful to enable the tax commission to ascertain the value and relative tax burden borne by all kinds of property in the state." The commission argues that subsections (20) and (22) of I.C. § 63–513 then give it power to issue summonses and obtain sub-

poenas to obtain the requested information in these records because it is requesting "data relating to any matter within its jurisdiction."

The commission requests the escrow records for statistical purposes, i. e., to enable it to compute the ratio of assessed value of property to market value. It professes no interest in the individual transactions that will be disclosed *per se*, but only for the aggregate computation of the ratio. In this respect, this case is quite similar to United States v. Humble Oil & Refining Co., 488 F.2d 953, rehearing denied by court en banc, 491 F.2d 1272 (5th Cir. 1974) appeal pending, 43 LW 3042 (Aug. 13, 1974). In *Humble,* the Internal Revenue Service issued a summons to Humble Oil for all of its records for mineral leases executed in 1970 in order to accumulate data on compliance with certain provisions of the Internal Revenue Code. The Fifth Circuit upheld the district court's denial of enforcement of this summons upon the grounds that the statute involved, 26 U.S. C. § 7602, which grants the summons power to the IRS, did not authorize the IRS to use its summons power to further its research projects, even though the research projects were themselves authorized under 26 U.S.C. § 7601. The court observed that "[i]n essence, the IRS maintains that it is empowered to conscript citizens into its service to perform the function of accumulating data for its research projects." 488 F.2d at 956.

We believe the state tax commission here is making a similar claim as was made in the *Humble* case. We reject the commission's claim and uphold the ruling of the district court. It is by no means clear to us that the legislature, by assigning to the state tax commission the duty to investigate the ratios of assessed valuation to market value of real property among the various counties, intended to confer upon the commission the power to demand that escrow holders turn over to the commission all of their records concerning real estate transactions for which they have served as escrow agent.

This view which we take of § 63–513 is supported by the language in § 63–513(11) which speaks of corporations furnishing information concerning *"their* capital, funded or other debt, current assets and liabilities, value of property, earnings, operating and other expenses, taxes and all other facts which may be needful to enable the tax commission to ascertain the value and the relative tax burden borne by all kinds of property in the state." Such language, which speaks primarily to facts and documents relating to the corporation's own affairs cannot, in our view, be construed to require disclosure of the documents of third parties held by the bank. Finding no clear legislative intent that the tax commission be granted the sweeping subpoena powers here sought, the order of the district court quashing the subpoena is affirmed.

■ While this conclusion obviates the necessity to discuss other issues raised by appellant, discussion of one other procedural matter is necessary. Respondents moved to dismiss the appeals herein for failure of the appellant to comply with Rule 41(4) of this Court regarding timely filing of appellant's brief. There appears to have been an inordinate delay in the filing of appellant's brief, and while there appears to be no prejudice to respondent which would justify the dismissal of the appeal or the imposition of sanctions upon counsel, as in Fowler v. Uezzell, 94 Idaho 951, 500 P.2d 852 (1972), the violation of Rule 41(4) cannot pass without comment.

The order of the district court quashing the subpoenas is affirmed.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.