**UNITED STATES of America and Octavio Saldana**

v.

**FIRST NATIONAL BANK IN DALLAS, Bank of the Southwest, and Trinity National Bank.**

**No. CA 3-79-0060-C.**

United States District Court, N. D. Texas, Dallas Division.

April 6, 1979.

Kenneth J. Mighell, U. S. Atty., Dallas, Tex., for petitioners.

Philip W. Stewart, Dwight R. Mann, Dallas, Tex., for First Nat'l Bank, First International Bancshares, Inc.

Kenneth Stohner, Dallas, Tex., for Bank of the Southwest.

Jerry D. Johnson, Lyne, Klein, French & Womble, Dallas, Tex., for Trinity Nat. Bank.

Leon Crum, Dallas, Tex., for intervenors Dr. James A. Yeoham and Velma Yeoham.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is an action under sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954. Petitioners have asked this Court to enter an order enforcing summons issued to the Respondents seeking access to records pertaining to the accounts of Dr. James A. Yeoham, Ms. Velma Yeoham, his wife, their children Paul, Loraine and James, and Dr. James A. Yeoham, a Professional Association, at the Respondent Banks.

Dr. Yeoham, Ms. Yeoham and the Corporation have stayed the summons and intervened in this proceeding in order to protect themselves from what they contend is an illegal intrusion into their financial affairs.

Mr. Charles C. Mitchell, a Revenue Agent of the Internal Revenue Service, testified at the hearing conducted in this proceeding that he was the agent who initially started the examination of Dr. Yeoham's income tax return for the year 1976. His pertinent testimony was that Dr. Yeoham's return

was being examined under a Taxpayer Compliance Measurement Program Audit.

To the best of his knowledge, this is a program where a computer model set up for the purpose of gauging when a particular return should be examined is tested to insure its accuracy. Of secondary importance is the checking of the correctness of the return which has been randomly selected by the computer. But, primarily, the purpose of the program is to determine the accuracy of the model.

Mr. Mitchell, before he was transferred to other duties, partially examined Dr. Yeoham's financial records along with Ms. Yeoham's and the Corporation's. But he did not see all of them. He had to look at Ms. Yeoham's because Dr. and Ms. Yeoham had filed a joint return. The Corporation's records were voluntarily produced.

The next agent to do any meaningful examination was Petitioner Octavio Saldana. Mr. Saldana attempted to see further records but was denied permission to do so. Ultimately he issued the summons in question to the Respondents.

Upon notification by the banks, as required by law, Intervenors stayed the summons, causing this civil action to be filed.[1]

There is no dispute as to jurisdiction and the Court after a review of the pleadings and testimony concludes that it does have jurisdiction.

Intervenors have complained that the Internal Revenue Service is not allowed by law to examine returns for the purpose of carrying on research. This contention is fully supported by the case of *United States v. Humble Oil & Refining Company*, 488 F.2d 953 (5 Cit., 1974); 421 U.S. 943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975); on remand, 518 F.2d 747 (1975).

The summons that the IRS had issued in *Humble* was for the purpose of checking into compliance with certain Internal Revenue Code provisions that dealt with potentially large tax advantages. Humble was summoned to produce its records as to whom it had surrendered mineral leases in 1970. The surrender of mineral leases can trigger tax disadvantages to the mineral lessors which raises the potential for tax abuse.

The IRS had no reason to believe that any of these lessors had failed to properly make their returns. The IRS, also, had not instituted any program to make an industry-wide examination as to the compliance with the applicable code sections.

On these facts, the Fifth Circuit held that the IRS was wanting to conduct research, not an investigation. That Court then concluded that § 7602 of the Internal Revenue Code of 1954 only allowed investigations into the correctness of returns; but, that it did not allow research into compliance with code provisions.

This decision was appealed to the Supreme Court which vacated and remanded for reconsideration in light of *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975).

The Fifth Circuit, on remand, distinguished *Bisceglia* as being an investigation. That even though the IRS did not know who might have not paid their taxes in *Bisceglia*, there was a strong suspicion in that case that someone in particular had not, a material difference in the eyes of the Fifth Circuit. So the Court reaffirmed its prior holding.

The opinion on rehearing in the case of *United States v. Carter*, 489 F.2d 413 (5th Cir., 1973), reh. den. 504 F.2d 428 (1974), does muddy the waters, at least on the surface. But a reading of the two opinions shows a different situation from the one in *Humble*. In *Carter*, a tax preparer had improperly completed a "test" return. Because of this, the IRS wished to learn whose returns he had prepared so that they could be checked. This is analogous to *Bisceglia* in that the IRS had a reason to believe that certain returns were incorrect. Moreover, this was part and parcel of a program which had as its basis the upgrading of tax preparer prepared returns. It was not a

---

1. § 7609 of the Internal Revenue Code of 1954.

research project with a goal of determining if tax preparers were accurately preparing returns but an investigation as to the competency of individual tax preparers and the returns that they had prepared.

As Dr. Yeoham's return was selected primarily for research purposes, this Court is compelled to conclude that *Humble* is controlling and the petition for enforcement should and will be denied. Intervenors' attorney is requested to prepare and submit an appropriate order.